Tadiaeerro, J.
The plaintiff seeks to render the defendants liable, as heirfe of the late Henry Doyal, under his alleged endorsement of a promissory note for $5,700, drawn by R. A. Stewart on the 28th of January, 1859; and made payable twelve months after date, with interest at eight per cent, per annum from date of the note. The defence is, that having no knowledge of the existence of such a note, they can neither admit nor deny the signature of their ancestor; but they disclaim all liability whatever to the plaintiff, and hold him to strict proof. . ;
The defendants had judgment in their favor, and the plaintiff appealed. We consider the endorsement of Doyal fully established. The main question in the case is as to the sufficiency of the notices of protest to bind the endorser or his heirs. The note was drawn payable, to the order of Henry Doyal, and by him endorsed before maturity;' and as it seems, for the accommodation of the drawer. It was made payable at the Citizens’ Bank in New Orleans, became the property of John Bird, of Missouri, whose agent Abram Bird, being in the parish of East Baton Rouge in this State, placed it in the Branch of the Louisiana State Bank, at Baton Rouge, for collection. Pike, the cashier of the Branch Bank, transmitted it to the parent bank in this city, and when due, it was duly protested for non-payment. The notary’s certificate sets out that the notices of protest “were served on the parties respectively in the manner following, viz: On R. A. Stewart, drawer, H. Doyal, A. Bird, and Wm. S. Pike, cashier, all enclosed to the address of the latter at Baton Rouge, Louisiana, and put in the post-office of this city, on the date of said protest in. *542 time for the first mail thereafter. Duplicate notice for H. Doyal, endorser, left at the office of Mr. Ph. Rotehford, his attorney in fact, with Mr. S. Brown, as directed by C. A. P. Rondeau, cashier.”
It is in proof thit Henry Doyal died on the 29th of January, 1859, one year and two days before the date of the protest. That suits were instituted against his executors; in one case, on the 16th of February, 1859, and in another, on the 26th of September of the same year; that the large commercial house of Rotehford, Brown & Co., of Now Orleans, were the factors of Henry Doyal for many years, and up to the time of his death, receiving and disposing of the sugar crops of four large plantations, and furnishing them with all needful supplies; that the same house continued to do the business of these plantations after Doyal’s death, doing the business of the executors; that Philip Rotehford the principal member of the firm, was appointed by Doyal, his agent and attorney in fact, with general and special powers, by a notarial act executed in 1845, and that he continued to act under this procuration during Doyal’s lifetime, some fourteen years or more. This act authorizes Philip Rotehford to draw and endorse promissory notes in the name of Henry Doyal, and to make notes payable to the order of Philip Rotehford, either for the use of said Philip Rotehford, or of Henry Doyal; to draw and endorse bills of exchange, domestic or foreign, and generally to do and perform all, and every other act that may be requisite and necessary, touching the premises as fully and effectually as the said Doyal himself might or could do.”
Henry Doyal lived in Ascension parish, and his post-office was New River. These facts seem to have been well known in New Orleans, within the range of his business transactions, which appear to have been quite large and extensive. The notary who protested the note appears to have been ignorant both of Doyal’s post-office, and of his decease. Pike, the cashier of the Branch of the State Bank of Louisiana at Baton Rouge, to whom the notary enclosed notices for the parties to the note, testifies that he has no distinct recollection of receiving any notice. He says: “It was my invariable habit on the same day on which I received notices to parties out of town, to send them by mail to their address at their proper post-offices, if known to us. I am positive they were disposed of, as I have stated, if I received them; but I have no recollection of having received them. Brown, to whom at the office of Philip Rotchford, the attorney in fact, the notary says in his certificate, that he delivered the duplicate notice to Henry Doyal, testifies, that had the notice of protest been left with him, as stated in the protest, it would have been handed to Philip Rotehford. ”
' James W. Rotehford testified, that if the notary had enquired at the office of Rotehford, Brown & Co., where Henry Doyal lived, he could have obtained the information from any person in the office.
In the case of Hoff v. Baldwin, 12 M., p. 701, quoted in the brief of the plaintiff’s counsel, the notary who protested the note, swore that he was generally in the habit of giving notices on all proti sted notes and bills, and that he presumed he gave notice to the defendant, as he was requested to be very particular about it; but that he had no distinct recollection about notifying the defendant, having had a great deal of *543 protesting to do that summer. This court decided the testimony insufficient to establish notice. We think that case stronger than the one made out by the testimony of Pike, the most important introduced by the plaintiff in this case, for the notary in the case cited founds his presumption of having given notice, not upon his practice alone, but also, upon a fact stated, namely: that in that instance he had been requested to be very particular about giving the notice. There is no distinct fact stated in Pike’s testimony, to warrant a presumption by him that he even received the notices, much less that he served them. His testimony is altogether hypothetical. He has no recollection of having received the notices, but is positive if he did receive them, they were disposed of as he stated, because it was his invariable habit to transmit notices to the parties on the same day on which they were received.
The service of the duplicate notice to Doyal upon Rotchford, so long the attorney in fact of Doyal, is problematical, if we give full weight to the evidence of Brown, to whom the notary certifies he delivered it. The power of attorney does not specially authorize the mandatary to receive notice of protest; and the power to receive notice is not necessarily included in that of endorsing. 4th N. S. 88. But if the procuration had contained the specific power to receive notice, it could not have availed the plaintiff, as the mandate expired by the death of Doyal, a year before protest was made. C. C., 2996. 2 Cranch, 517. Ibid. p. 685.
In the case of the Louisiana State Bank v. Dumortract, 4th An. 484, relied upon by plaintiff’s counsel, a notice directed to a party then deceased, was regularly served upon the executor. The court held the service sufficient to bind the estate. In the case before us we find no evidence tending to show that the notice directed to Doyal was received by his executors. The evidence is equally defective to show that the notice to Henry Doyal, the decedent, was received by his son, Henry R. Doyal, as urged by plaintiff. There being executors in office at the time of the protest of the note, the service would more properly have been made upon them.
We consider it well settled that the holder of a bill or note, is required to show the use of reasonable diligence to find out the residence of the endorser when it is unknown to him. 1 N. S. 328. Ohitty on Bills, 267 and 275. 12 M. 81.
The evidence in the record satisfies us that the exercise of a moderate degree of diligence would have put the notary in possession of the fact of the decease of the endorser long before, and the names and residence of his executors.
It is therefore ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs in both courts.